UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

PANAMA MUSIC, CORP,
and PANAMA MUSIC, INC.

      Plaintiffs,

v.

UNIVERSAL MUSIC GROUP, INC.

      Defendant.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, PANAMA MUSIC, CORP ("PMC") and PANAMA MUSIC, INC. ("PMI")(hereafter collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby sues Defendant, UNIVERSAL MUSIC GROUP, INC. d/b/a UNIVERSAL MUSIC LATINO/MACHETE MUSIC (hereafter "UMG"), and in support thereof, states as follows:

### Introduction

1. This is an action by Plaintiffs for the recovery of record label royalties, emanating from the exploitation of Master Recordings.

2. This action is for damages in excess of $75,000.00, exclusive of pre-judgment interest, court costs and attorneys' fees, together with claims for equitable relief.

### Parties

3. Plaintiff, PMC is a corporation existing pursuant to the laws of the Republic of Panama, with its principal place of business at Calle Ricardo Arias, Campo Alegre, Condominio Arcelia Local 2, Panama, Republica de Panama. PMC promotes its artists' music within the State of Florida.

4. Plaintiff, PMI is a corporation existing pursuant to the laws of Wyoming, with its principal place of business at 232 Andalusia Avenue, Suite 370, Coral Gables, Florida 33134.

5. UNIVERSAL MUSIC GROUP, INC. d/b/a UNIVERSAL MUSIC LATINO/MACHETE MUSIC is a corporation existing pursuant to the laws of Delaware, with its principal place of business at 420 Lincoln Road, Suite 200, Miami Beach, Florida 33139.

### Jurisdiction

6. Pursuant to Fla. Stat. § 48.193, the Courts of Florida have jurisdiction over UMG. UMG is engaged in substantial and not isolated activity within this state, including but not limited to manufacturing, promoting, advertising, distributing and selling records and recordings (Fla. Stat. § 48.193(2)). UMG operates, conducts, engages in or is carrying on a business within Florida. *See*, Fla. Stat. § 48.193(1)(a). The services provided by Florida residents to UMG have directly led to income and profits for UMG. UMG employs Florida residents for its business, and advertises, sells and distributes its products to Florida residents.

7. Jurisdiction is also appropriate pursuant to 28 U.S.C. §1332 because Plaintiffs have suffered over $75,000 in damages based on Defendant's actions and there is complete diversity of citizenship between the parties to this action.

8. This Court has jurisdiction over UMG, since UMG has maintained, and continues to maintain, an office in Miami-Dade County, Florida (specifically, in Miami Beach, Florida).

### Venue

9. Pursuant to 28 U.S.C. § 1391, venue is proper in Miami-Dade County, Florida in as much as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district. Universal Music Latino/Machete Music keeps an office in Miami-Dade County, Florida for transaction of its customary business, and the causes of action asserted herein, as set forth more specifically below, accrued in Miami-Dade County, Florida.

Moreover, the agreements between the parties were executed and breached by Defendant in Miami-Dade County, Florida.

### Factual Background/Common Allegations

10. Commencing on or about September 1, 2005, and continuing through March 15, 2011, UMG requested and Plaintiff, PMC reached a written agreement through the execution of the License Agreement, pursuant to which UMG agreed to release records and recordings for various PMC artists, including well-known artists Mach y Daddy, Aldo Ranks, and La Factoria in accordance with terms customary and ordinary in the music industry.

11. Amendments to the License Agreement added PMC artists Makano and Eddy Lover as artists whose records and recordings were licensed to UMG.

12. In exchange for PMC's grant of a license to UMG to enable UMG to release records and recordings of PMC's artists, UMG expressly agreed to pay PMI royalties calculated in accordance with specifications listed in the License Agreement.

13. UMG initially reported royalties on digital sales at fifty percent (50%) of the receipts, but later selectively determined what royalties were payable at 50% of UMG's receipts and others at royalty rates that were well below 50%.

14. Specifically, UMG made an adjustment of royalties paid to PMI on digital sales made <u>by companies that are not owned or part of the UMG group of companies</u> at eighteen percent (18%) for foreign sales and nineteen percent (19%) for United States sales.

15. UMG has attempted, but failed to justify the lower 18% and 19% payments on Paragraph 4 of the Schedule in the License Agreement, which states, "On USNRC Net Sales of Albums: Nineteen percent (19%) (the "Basic Rate") of the Royalty base Price as set out in paragraph 7.4. Notwithstanding the foregoing, the royalty payable in respect of Net Sales

3

outside of the United States and its territories and possessions, including Puerto Rico, shall be eighteen percent (18%)."

16. UMG's adjustment of royalties paid to PMI was made in violation of the Licensing Agreement, which only covers the Net Sale of Records sold by the Licensee (UMG) or its sub-licensees.

17. Paragraph 1.18 of the License Agreement states that a sub-licensee is a "company *within the Universal group of companies* to whom the Licensee may license its rights hereunder" (emphasis added).

18. Since the unilateral adjustment by UMG of royalties owed to PMI from 50% to 18% or 19% (depending on whether the sale was made inside or outside the United States) was based on sales of records and recordings by companies who are not within the UMG group of companies (ex: Apple ITunes and Amazon), UMG has underpaid the amount in royalties due to PMI.

19. In a decision handed down on October 31, 2011 involving the rapper Eminem, an appellate court determined that "beginning in approximately 2001, UMG entered into agreements with various third parties granting those entities rights to distribute music to consumers," and included Apples iTunes and major cellular telephone network carriers as examples of the types of third parties that UMG contracted with. *F.B.T. Prods., LLC v. Aftermath Records,* 2011 WL 5174766 (C.D. Cal. 2011).

20. In *F.B.T. Prods.,* UMG was paying plaintiffs royalties for permanent downloads and mastertones based on the rate set forth in the Records Sold provision of the licensing agreements. The same is true of the instant case.

21. The Records Sold provision in the *F.B.T. Prods.* license agreement set a royalty that varied between 12 and 20% for "full-price records sold." *Id.*

4

22. Notwithstanding the Records Sold provision, the Ninth Circuit found that the plaintiffs were owed a 50% royalty under the Masters Licensed provision for licensing the Eminem masters to third parties (including downloads and mastertones) under the license agreement. *F.B.T. Prods., LLC v. Aftermath Records,* 621 F.3d 958, 967 (9th Cir.2010).

23. Similarly, Paragraph 7.5.5 of the License Agreement in the instant case provides an identical 50% royalty under a Masters License provision. It states, "Licensor's royalty will be the sum equal to fifty percent (50%) of Licensee's net receipt with respect to the following Records and/or exploitation of Masters licensed hereunder…(d) any and all other licenses of Master recording not specifically provided herein."

24. The Master License provision is intended to apply to all licensed uses of the Masters that may not specifically be provided for in the License Agreement.

25. None of the amendments to the License Agreement changed the Master License provision contained within the License Agreement.

26. Since UMG licensed (but did not sell) the PMC records and recordings, PMI is entitled to royalties based on 50% of UMG's net receipts.

27. All conditions precedent to the filing of this action have occurred, were performed or were waived.

## COUNT I
## BREACH OF CONTRACT

28. Plaintiffs re-allege and re-aver paragraphs 1 through 27 as if fully set forth herein and further allege:

29. This is a Count for Breach of the License Agreement.

30. Although PMC has fully complied with the License Agreement, UMG has not.

5

175 Southwest 7th Street, Latitude One Offices, Suite 2410, Miami Florida 33130
P: 305.384.7370 • F: 305.384.7371
www.wolfelawmiami.com

31. UMG has breached the License Agreement by failing to collect and/or pay PMI various royalties due to PMI as a result of the exploitation of PMC's musical compositions under the terms of the License Agreement.

32. Specifically, UMG engaged in the following acts (inter alia), in violation of the terms of the License Agreement:

   A. Either intentionally or negligently miscalculated the royalties due to PMI.

   B. Adjusted royalties paid to PMI from "digital sales" of PMC's musical compositions from 50% to either 18% (for foreign sales) or 19% (for domestic sales).

33. Plaintiffs have been damaged by UMG's breaches and failure to comply with the License Agreement. UMG has failed to pay PMI the 50% royalty on "digital sales" provided by the Master License provision in the License Agreement.

34. Plaintiffs have has fully complied with its obligations under the terms of the License Agreement and has satisfied all conditions precedent prior to bringing this claim.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor against the Defendant, UMG, for compensatory damages, pre-judgment interest, court costs and attorneys' fees, and award any such other and further relief which the Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT REGARDING ENTITLEMENT TO ROYALTIES**

35. Plaintiffs re-allege and re-aver paragraphs 1 through 27 as if fully set forth herein and further allege:

36. This is a count for Declaratory Relief versus UMG regarding PMI's entitlement to royalties.

6

175 Southwest 7th Street, Latitude One Offices, Suite 2410, Miami Florida 33130
P: 305.384.7370 • F: 305.384.7371
www.wolfelawmiami.com

37. Plaintiffs request that the Court enter a declaratory judgment in their favor declaring that they are entitled to royalties since September 1, 2005 calculated at the 50% rate according to Paragraph 7.5.5 of the License Agreement for all "digital sales" of PMC's musical compositions licensed to UMG.

38. There is a bona fide, actual and present practical need for the declaration.

39. The declaration concerns a present, ascertained or ascertainable state of facts or a present controversy as to a state of facts.

40. Plaintiffs' privilege or right is dependent upon the facts or the law applicable to the facts.

41. UMG has an actual, present, adverse and antagonistic interest here either in fact or law.

42. The declaratory relief sought is not merely a request for legal advice from the Court or a request for an answer to a question propounded from curiosity.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor against Defendant, UMG, declaring that they are entitled to royalties since September 1, 2005 calculated at the 50% rate according to Paragraph 7.5.5 of the License Agreement for all "digital sales" (past, present, and future) of PANAMA MUSIC's musical compositions licensed to UMG, and awarding any such other and further relief as the Court deems just and proper.

### COUNT III
### DECLARATORY JUDGMENT REGARDING CONTINUING OBLIGATION UNDER THE TERMS OF THE LICENSE AGREEMENT

43. Plaintiffs re-allege and re-aver paragraphs 1 through 27 as if fully set forth herein and further allege:

175 Southwest 7th Street, Latitude One Offices, Suite 2410, Miami Florida 33130
P: 305.384.7370 • F: 305.384.7371
www.wolfelawmiami.com

44. This is a count for Declaratory Relief versus UMG regarding the status of the License Agreement between UMG and PMC.

45. PMC requests that the Court enter a declaratory judgment in its favor declaring that the License Agreement has been terminated, that PMC owes no further services to UMG, and that UMG no longer holds a license to any of PMC's musical compositions.

46. There is a bona fide, actual and present practical need for the declaration.

47. The declaration concerns a present, ascertained or ascertainable state of facts or a present controversy as to a state of facts.

48. Plaintiffs' privilege or right is dependent upon the facts or the law applicable to the facts.

49. UMG has an actual, present, adverse and antagonistic interest here either in fact or law.

50. The declaratory relief sought is not merely a request for legal advice from the Court or a request for an answer to a question propounded from curiosity.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor against Defendant, UMG, declaring that the License Agreement has been terminated, that PMC owes no further services to UMG, and that UMG no longer holds a license to any of PMC's musical compositions, and awarding any such other and further relief as the Court deems just and proper.

### Demand for Jury Trial

51. Plaintiffs demand trial by jury on all issues so triable.

8

175 Southwest 7th Street, Latitude One Offices, Suite 2410, Miami Florida 33130
P: 305.384.7370 • F: 305.384.7371
www.wolfelawmiami.com

## VERIFICATION

I, Janvario Crespo, as President of PANAMA MUSIC, INC, do hereby verify under penalties or perjury the truth of the allegations set forth herein.

*/s/ Janvario S. Crespo C.*
Janvario Crespo, President
Panama Music, Inc.

Respectfully submitted, this 18 day of January 2012, by:

**WOLFE LAW MIAMI, P.A.**
*Attorneys for Plaintiffs*
175 SW 7th Street, Suite 2410
Miami, FL 33130
Phone: 305.384.7370
Fax:    305.384.7371

By: /s/
RICHARD C. WOLFE
Florida Bar No.: 355607
rwolfe@wolfelawmiami.com
DARREN A. HEITNER
Florida Bar No.: 85956
dheitner@wolfelawmiami.com

9

175 Southwest 7th Street, Latitude One Offices, Suite 2410, Miami Florida 33130
P: 305.384.7370 • F: 305.384.7371
www.wolfelawmiami.com